CRIMINAL APPEAL

Nos.  24-30668 c/w 25-30422

————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*

*v.*

BLAIR TAYLOR,

*Defendant-Appellant.*

————————————

on appeal from the
U.S. District Court for the Eastern District of Louisiana
Case No. 2:23-cr-184-1

————————————

BLAIR TAYLOR'S APPELLANT'S BRIEF

——————————————

Alysson Mills
650 Poydras Street Suite 1525
New Orleans, Louisiana 70130
t/f: 504-586-5253
alysson@alyssonmills.com

*CJA Counsel for Blair Taylor*

## CERTIFICATE OF INTERESTED PARTIES

The following listed persons, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal:

1. Blair Taylor, defendant-appellant

2. Alysson Mills, court-appointed appellate counsel for Blair Taylor

3. John Hall Thomas, retained trial counsel for Blair Taylor

4. Kevin G. Boitman, Assistant U.S. Attorney, appellate counsel for plaintiff-appellee

5. Inga C. Petrovich, Elizabeth A. Privatera, and James N. Ollinger, Assistant U.S. Attorneys, trial counsel for plaintiff-appellee

6. Eldon E. Fallon, U.S. District Court for the Eastern District of Louisiana

December 15, 2025          */s/ Alysson Mills*
                            Alysson Mills

# STATEMENT REGARDING ORAL ARGUMENT

After a state-court jury acquitted Blair Taylor of second degree murder, he was charged with murder through the use of a firearm in federal court. The state and federal prosecutor were the same. The re-prosecution violated the double jeopardy clause and was vindictive. This Court does not appear to have addressed a fact pattern like this. Mr. Taylor requests oral argument if it will aid the Court in its decision.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ..............................................ii

STATEMENT REGARDING ORAL ARGUMENT..................................iii

STATEMENT OF JURISDICTION ....................................................... 1

STATEMENT OF THE ISSUE.............................................................. 1

STATEMENT OF THE CASE

    Introduction .................................................................................2

    A state-court jury acquitted Mr. Taylor ............................................2

    The same prosecutor indicted him in federal court ..........................3

    Trial .........................................................................................5

    Presentence report........................................................................6

    Sentencing..................................................................................6

    Restitution .................................................................................7

    Consolidated appeals....................................................................7

SUMMARY OF THE ARGUMENT........................................................ 8

STANDARD OF REVIEW ................................................................... 9

ARGUMENT

1.  The re-prosecution violated the double jeopardy clause. ................ 10

    a.  Second degree murder and murder through the use of a
        firearm are the "same" offenses. ................................ 10

    b.  The dual sovereign doctrine does not apply. ............................ 15

2.  The re-prosecution was vindictive. .................................... 19

3.  The errors are plain. ................................................. 21

4.  Mr. Taylor's counsel was ineffective. ................................ 23

CONCLUSION ................................................................ 25

CERTIFICATE OF SERVICE ................................................... 26

CERTIFICATE OF COMPLIANCE ................................................ 27

# TABLE OF AUTHORITIES

**Cases**

*Ashe v. Swenson,*
397 U.S. 436 (1970) ........................................................................ 15

*Bartkus v. Illinois,*
359 U.S. 121 (1959) .................................................................. 16, 18

*Blockburger v. United States,*
284 U.S. 299 (1932) ........................................................................ 11

*Bordenkircher v. Hayes,*
434 U.S. 357 (1978)) ...................................................................... 19

*Brown v. Ohio,*
432 U.S. 161(1977) ......................................................................... 14

*Currier v. Virginia,*
585 U.S. 493 (2018) ........................................................................ 14

*Denezpi v. United States,*
596 U.S. 591 (2022) ........................................................................ 15

*Gamble v. United States,*
587 U.S. 678 (2019) ............................................................. 4, 11, 15

*Murphy v. Puckett,*
893 F.2d 94 (5th Cir. 1990) ........................................................... 23

*Ramos v. Louisiana,*
590 U.S. 83 (2020) ............................................................................ 3

*State v. Taylor,*
2018-1039 (La. App. 4 Cir. 6/17/20), 302 So. 3d 145 ............................ 3

*Strickland v. Washington,*
466 U.S. 668 (1984) ........................................................................ 23

*United States v. Angleton,*
314 F.3d 767 (5th Cir. 2002) ............................................... 4, 8, 16, 17

*United States v. Belcher,*
762 F.Supp. 666 (W.D. Va. 1991)..................................................... 8, 17

*United States v. Brown,*
571 F.3d 492 (5th Cir. 2009) ............................................................ 10

*United States v. Cluff,*
857 F.3d 292 (5th Cir. 2017) ............................................................ 19

*United States v. Dvorin,*
817 F.3d 438 (5th Cir. 2016) ...................................................... 20, 21

*United States v. G.P.S. Auto. Corp.,*
66 F.3d 483 (2d Cir.1995)................................................................. 17

*United States v. Gonzalez-Rodriguez,*
621 F.3d 354 (5th Cir. 2010) ............................................................ 22

*United States v. Goodwin,*
457 U.S. 368 (1982) .......................................................................... 19

*United States v. Hamilton,*
118 F.4th 655 (5th Cir. 2024)............................................................ 10

*United States v. Howard,*
766 F.3d 414 (5th Cir. 2014) ............................................................ 21

*United States v. Jarvis,*
7 F.3d 404 (4th Cir. 1993) ................................................................ 23

*United States v. Krezdorn,*
718 F.2d 1360 (5th Cir.1983) (en banc)...................................... 20, 21

*United States v. London,*
568 F.3d 553 (5th Cir. 2009) ............................................................ 24

*United States v. McGuire,*
151 F.4th 307 (5th Cir. 2025)............................................................ 22

*United States v. Meza,*
701 F.3d 411 (5th Cir. 2012) .............................................................. 9

*United States v. Mitchell,*
No. 24-60607, 2025 WL 3251467 (5th Cir. Nov. 21, 2025) .................. 21

*United States v. Olano,*
507 U.S. 725 (1993) ....................................................................... 23

*United States v. Pineda–Ortuno,*
952 F.2d 98 (5th Cir. 1992) ............................................................. 9

*United States v. Saltzman,*
537 F.3d 353 (5th Cir. 2008) ........................................................ 19

*United States v. Thomas,*
991 F.2d 206 (5th Cir. 1993) ........................................................ 10

*United States v. Wheeler,*
435 U.S. 313 (1978) ..................................................................... 18

## Statutes

18 U.S.C.A. § 1111 ....................................................................... 13

18 U.S.C.A. § 924(j)(1) ....................................................... 12, 13, 14

La. Stat. Ann. § 14:30.1 ......................................................... 11, 13

## STATEMENT OF JURISDICTION

This Court has jurisdiction over these consolidated appeals pursuant to 28 U.S.C. § 1291:  The district court entered final judgments on October 3, 2024[1] (judgment of conviction) and July 15, 2025[2] (restitution order), and Mr. Taylor timely filed notices of appeal on October 17, 2024[3] and July 29, 2025.[4]

## STATEMENT OF THE ISSUE

After a state-court jury acquitted Blair Taylor of second degree murder, he was charged with murder through the use of a firearm in federal court.  The state and federal prosecutor were the same.  This Court does not appear to have addressed a fact pattern like this.  Did the re-prosecution violate the double jeopardy clause?  Was it vindictive?

---

[1] ROA.243

Citations are to the record for appeal no. 25-30422.

[2] The district court's restitution order, at docket number 117, is sealed and not part of the record on appeal made available to counsel.

[3] ROA.253

[4] ROA.294

1

## STATEMENT OF THE CASE

### Introduction

On August 10, 2014, the New Orleans Police Department responded to a report of a shooting. When they arrived, they found seven victims, two deceased.

A few days later they arrested four men in connection with the shooting: Michael Finnie, Mr. Taylor, Joe Nelson, and Jeffery Rivers.

According to the state, the shooting was retribution for stolen drugs. Finnie's mother, a dealer, believed a man named Terrence McBride stole from her, and Finnie wanted him killed. The state alleged Finnie, Mr. Taylor, and Nelson drove to a house where they knew McBride to be and, seeing him on the porch, opened fire. Two guns, a 9mm and an AK47, were used. Authorities later found the 9mm in Rivers's apartment.

### A state-court jury acquitted Mr. Taylor.

On December 15, 2014, the state charged Finnie, Mr. Taylor, and Nelson with two counts of second degree murder and five counts of attempted second degree murder and charged Rivers with obstruction of

2

justice.[5]  Then-assistant district attorney Inga Petrovich represented the state in the prosecution.

Finnie and Rivers pleaded guilty.[6]

The state, still represented by Petrovich, tried Mr. Taylor and Nelson on January 30, 2017.  A non-unanimous jury returned guilty verdicts for all charges.[7]  Louisiana appellate courts, however, vacated those convictions in the light of *Ramos v. Louisiana*, 590 U.S. 83 (2020). *See generally State v. Taylor*, 2018-1039 (La. App. 4 Cir. 6/17/20), 302 So. 3d 145.

The state tried Mr. Taylor again on October 17, 2022.  This time the jury fully acquitted him.[8]

**The same prosecutor indicted him in federal court.**

On August 18, 2023, in an indictment signed by now-assistant U.S. attorney Petrovich,[9] the federal government charged Mr. Taylor with two counts of causing death through the use of a firearm.

---

[5] ROA.48

[6] ROA.48; see also ROA.1070 n.1 and ROA.1071 n.3.

[7] ROA.48

[8] ROA.49

[9] ROA.15

Under the Fifth Amendment's double jeopardy clause, the government cannot re-prosecute a man for a crime for which he has been acquitted. But the clause ordinarily does not apply to two separate sovereigns, here, the federal government and the state. *E.g., Gamble v. United States*, 587 U.S. 678 (2019). "The key, however, is whether the separate sovereigns have made independent decisions to prosecute, or whether, instead, 'one sovereign has essentially manipulated another sovereign into prosecuting,' or the state and federal prosecutor are the same person." *United States v. Angleton*, 314 F.3d 767, 774 (5th Cir. 2002) (citations omitted). The state and federal prosecutor were the same person in Mr. Taylor's cases.

Mr. Taylor's then-counsel did not move to dismiss the indictment on the basis that it violated the double jeopardy clause. The district court therefore did not have an opportunity to address the issue. The issue came up only secondarily when the government moved to exclude from trial evidence of Mr. Taylor's acquittal. In its motion *in limine* the government told the district court the acquittal did not implicate the

4

double jeopardy clause, but it did not tell the district court that Petrovich had also prosecuted the state case.[10]

**Trial**

The government tried Mr. Taylor on June 17, 2024.[11]  Petrovich made the opening statement[12] and final closing argument.[13]

The government called 17 witnesses over three days.  Many of the same witnesses had testified in the two trials in the state case.[14]  Most testified to the crime scene and the victims' injuries.  None of the victims saw Mr. Taylor at the scene.

Detective Timothy Bender testified to a jail call in which Mr. Taylor asked his girlfriend whether agents had seized a "hammer," meaning, according to Detective Bender, the 9mm murder weapon.[15]  In fact agents found the 9mm in Rivers's apartment.[16]

---

[10] ROA.102

[11] ROA.298

[12] ROA.420

[13] ROA.881

[14] ROA.106 ("Many of the witnesses who will be called to testify at the federal trial have previously testified in either one or both of Taylor's state trials.")

[15] ROA.527

[16] ROA.514

5

The only witnesses who testified that Mr. Taylor was involved in the shooting were Finnie, Nelson, and Rivers, all cooperating witnesses with their own incentives to testify.

Mr. Taylor did not testify and did not call any witnesses.

The jury convicted him of both counts of murder through the use of a firearm.[17]

### Presentence report

The presentence report determined that Mr. Taylor had a total offense level of 43[18] and a criminal history score of zero, which put him in a criminal history category of I.[19]  The guidelines sentence was life imprisonment.[20]

### Sentencing

Sentencing was October 3, 2024.[21]

---

[17] ROA.922
[18] ROA.1075
[19] ROA.1077
[20] ROA.1083
[21] ROA.926

6

The district judge adopted the presentence report[22] and sentenced Mr. Taylor to two terms of life imprisonment.[23]

Judgment was entered the same day,[24] and Mr. Taylor timely filed a notice of appeal.[25]　That appeal was stayed pending resolution of restitution proceedings.

### Restitution

Restitution proceedings concluded by order dated July 15, 2025,[26] for which Mr. Taylor timely filed another notice of appeal.[27]　The district court entered an amended judgment on August 28, 2025.[28]

### Consolidated appeals

On September 11, 2025, on Mr. Taylor's motion, his two appeals were consolidated into one and their briefing schedules were aligned.

---

[22] ROA.928

[23] ROA.939

[24] ROA.243

[25] ROA.253

[26] The district court's restitution order, at docket number 117, is sealed and not part of the record on appeal made available to counsel.

[27] ROA.294

[28] The district court's amended judgment, at docket number 121, is not part of the record on appeal made available to counsel.

## SUMMARY OF ARGUMENT

Mr. Taylor's federal prosecution violated the double jeopardy clause and was vindictive.

Mr. Taylor had a right not to be "twice put in jeopardy ... for the same offence." U.S. Const., Amdt. 5, cl. 2.  Second degree murder and murder through the use of a firearm are, for these purposes, the "same." Both offenses require 1) a killing of a human being with 2) intent.  The state-court jury, when it acquitted Mr. Taylor of second degree murder, necessarily acquitted him of killing a human being with intent. Petrovich, as a state-court prosecutor, could not ask a new jury to convict him of the same thing.

Under the dual sovereign doctrine, two different sovereigns may prosecute the same crime.  But the dual sovereign doctrine presupposes "independent decisions to prosecute." *United States v. Angleton*, 314 F.3d 767, 774 (5th Cir. 2002).  It does not apply where "the state and federal prosecutor are the same person." *Id.* (citing *United States v. Belcher*, 762 F.Supp. 666, 671 (W.D. Va. 1991)).  The state and federal prosecutor, Petrovich, was the same person here.  The re-prosecution violated the double jeopardy clause.

8

The re-prosecution violated the due process clause, too, because it was vindictive. The only explanation for Petrovich's re-prosecution is Mr. Taylor successfully set aside the conviction that she obtained against him in state court.

Although Mr. Taylor's then-counsel did not make these arguments in the district court, the constitutional errors are plain and require that the Court vacate Mr. Taylor's conviction.

Because Mr. Taylor's then-counsel did not make these arguments in the district court, his assistance was ineffective.

## STANDARD OF REVIEW

Mr. Taylor's then-counsel did not argue either that Mr. Taylor's federal prosecution violated the double jeopardy clause or that it was vindictive. This Court thus reviews for plain error. *E.g., United States v. Meza*, 701 F.3d 411, 433–34 (5th Cir. 2012) ("[T]his court has reviewed unpreserved double jeopardy issues for plain error.") (citing *United States v. Pineda–Ortuno*, 952 F.2d 98, 105 (5th Cir.1992) (reversing conviction on double jeopardy grounds because "[w]here plain error is apparent, the issue may be raised sua sponte by this court even though it is not assigned or specified")); *United States v. Thomas*, 991 F.2d 206, 208 (5th

9

Cir. 1993) (reviewing for plain error vindictive prosecution claim raised for first time on appeal).

Otherwise, "[w]hether a prosecution violates the Double Jeopardy Clause or is precluded by collateral estoppel are issues of law that we review *de novo.*" *United States v. Hamilton,* 118 F.4th 655, 659 (5th Cir. 2024) (quoting *United States v. Brown,* 571 F.3d 492, 497 (5th Cir. 2009) (citation omitted)).

## ARGUMENT

**1. The re-prosecution violated the double jeopardy clause.**

### a. Second degree murder and murder through the use of a firearm are the "same" offenses.

Mr. Taylor had a right not to be "twice put in jeopardy ... for the same offence." U.S. Const., Amdt. 5, cl. 2.

The state of Louisiana could not have prosecuted Mr. Taylor for murder through the use of a firearm after a state-court jury acquitted him of second degree murder.

The federal government could not have prosecuted him for murder through the use of a firearm if a federal-court jury had already acquitted him of second degree murder.

10

Second degree murder and murder through the use of a firearm are, for present purposes, the "same" offenses. The two offenses are not different offenses merely because different laws proscribe them. "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "So if two laws demand proof of the same facts to secure a conviction, they constitute a single offense under our Constitution and a second trial is forbidden." *Gamble*, 587 U.S. at 737 (Gorsuch, J., dissenting).

Here, the two laws demand proof of the same facts to secure a conviction.

First, La. Stat. Ann. § 14:30.1. That statute proscribes second degree murder. It states:

> A. Second degree murder is the killing of a human being:
>
> (1) When the offender has a specific intent to kill or to inflict great bodily harm; or
>
> (2) When the offender is engaged in the perpetration or attempted perpetration of aggravated or first degree rape, forcible or second degree rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, resisting a police officer with force or violence, assault by drive-by shooting, armed robbery, first

11

degree robbery, second degree robbery, simple robbery, cruelty to juveniles, second degree cruelty to juveniles, cruelty to the elderly and persons with infirmities, or terrorism, even though he has no intent to kill or to inflict great bodily harm.

\* \* \*

B. Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

Next, 18 U.S.C.A. § 924(j)(1). That statute proscribes murder through the use of a firearm. It states:

(c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

\* \* \*

**(j) A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall--**

**(1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life**; and

(2) if the killing is manslaughter (as defined in section 1112), be punished as provided in that section.

12

(Emphasis added.)   The statute expressly incorporates 18 U.S.C.A. § 1111, which separately defines murder:

> (a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.
>
> Any other murder is murder in the second degree.

Plainly, the double jeopardy clause would have prohibited the same sovereign from prosecuting Mr. Taylor for murder as defined by 18 U.S.C.A. § 1111 after he was acquitted of second degree murder as defined by La. Stat. Ann. § 14:30.1.  Both statutes require 1) a killing of a human being with 2) intent.  The jury, when it acquitted Mr. Taylor of second degree murder, necessarily acquitted him of killing a human being with intent.  The same sovereign could not thereafter ask a new jury to convict him of the same thing.

To be sure, the offense of murder through the use of a firearm in violation of 18 U.S.C.A. § 924(j)(1) requires proof of additional facts.  The federal government, in its prosecution, thus was required to establish

13

elements that the state did not have to establish in its trial. But it remains that § 924(j)(1) included the offense of murder, and a jury had already acquitted Mr. Taylor of that. "Whatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense." *Brown v. Ohio*, 432 U.S. 161, 169 (1977) (observing that a conviction for arson would bar a subsequent prosecution for felony murder based on a death caused by the arson); *see also id.* at 168 ("As is invariably true of a greater and lesser included offense, the lesser offense joyriding requires no proof beyond that which is required for conviction of the greater auto theft. The greater offense is therefore by definition the 'same' for purposes of double jeopardy as any lesser offense included in it."). *See also Currier v. Virginia*, 585 U.S. 493, 500 (2018) ("Historically, courts have treated greater and lesser-included offenses as the same offense for double jeopardy purposes, so a conviction on one normally precludes a later trial on the other.").

Stated differently, a second jury could not convict Mr. Taylor of murder without calling into question the first jury's acquittal. *Currier*, 585 U.S. at 499 ("[B]ecause the first jury necessarily found that the

14

defendant 'was not one of the robbers,' a second jury could not 'rationally' convict the defendant of robbing the second victim without calling into question the earlier acquittal.") (citing *Ashe v. Swenson*, 397 U.S. 436 (1970).

### b. The dual sovereign doctrine does not apply.

The federal government could prosecute Mr. Taylor for murder through the use of a firearm after a state-court jury acquitted him of second degree murder only on the premise that the federal and state governments are different sovereigns. Under the dual sovereign doctrine, two different sovereigns may prosecute the same crime. *E.g., Gamble v. United States*, 587 U.S. 678 (2019). *See also Denezpi v. United States*, 596 U.S. 591, 597 (2022) ("an offense defined by one sovereign is necessarily a different offense from that of another sovereign").

The dual sovereign doctrine has "no meaningful support in the text of the Constitution, its original public meaning, structure, or history." *Gamble*, 587 U.S. at 737-38 (Gorsuch, J., dissenting). It has many critics, including, notably, Justices Gorsuch and Ginsburg. *See id.* at 743-44 (Gorsuch, J., dissenting) ("And the federal prosecutor can pursue you even if you were *acquitted* in the state case. None of that offends the

15

Constitution's plain words protecting a person from being placed 'twice in jeopardy of life or limb' for 'the same offence.' Really?"); *id.* at 729 (Ginsburg, J., dissenting) ("In our 'compound republic,' the division of authority between the United States and the States was meant to operate as 'a double security [for] the rights of the people.' The separate-sovereigns doctrine, however, scarcely shores up people's rights. Instead, it invokes federalism to withhold liberty.") (quoting The Federalist No. 51, at 323 (J. Madison)).

"Fear and abhorrence of governmental power to try people twice for the same conduct is one of the oldest ideas found in western civilization." *Id.* at 738 (Gorsuch, J., dissenting) (quoting *Bartkus v. Illinois*, 359 U.S. 121, 151 (1959) (Black, J., dissenting)). "A free society does not allow its government to try the same individual for the same crime until it's happy with the result." *Id.* at 737 (Gorsuch, J., dissenting). Mr. Taylor preserves for any future review the argument that the dual sovereign doctrine is unlawful.

In any event, the dual sovereign doctrine does not apply here.

The dual sovereign doctrine presupposes "independent decisions to prosecute." *United States v. Angleton*, 314 F.3d 767, 774 (5th Cir. 2002).

16

It does not apply where "one sovereign has essentially manipulated another sovereign into prosecuting," *id.* (quoting *United States v. G.P.S. Auto. Corp.*, 66 F.3d 483, 495 (2d Cir.1995)), or where "the state and federal prosecutor are the same person," *id.* (citing *United States v. Belcher*, 762 F.Supp. 666, 671 (W.D. Va. 1991)). The state and federal prosecutor were the same person here.

This case is, in relevant respects, no different than *Belcher*, which this Court cited in *Angleton*. In *Belcher*, a state prosecutor in Virginia, McAfee, charged Patrick Lee with manufacturing marijuana. After a state-court judge dismissed the indictment, McAfee tried to appeal, but he was untimely. Later, acting as a Special Assistant U.S. Attorney, he drafted a federal indictment that again charged Patrick with manufacturing marijuana. Patrick moved to dismiss the indictment, arguing that it violated the double jeopardy clause. The court agreed. It first observed that "were this case pending before a Virginia court, it would have to be dismissed on collateral estoppel grounds." *Belcher*, 762 F. Supp. at 670. It then observed that the facts presented not two separate sovereigns but one "super sovereign." *Id.* at 671 ("[T]he pooling of prosecutorial power effectively creates one 'super sovereign,' *i.e.*, a

17

unitary government. Thus, a central government is actually at work here, not a federal government."). The court continued:

> The unique concept of dual sovereignty arises from the federal system under which State governments and the federal government coexist. As *Wheeler* makes clear, criminal justice under this system proceeds on the assumption that the federal government and State governments have their own decision makers who arrive at independent judgments as to the use of the awesome power they possess over who, when and how to prosecute. The court believes that federalism does not contemplate the uniting of these awesome powers in one person. Indeed, it was precisely such aggregations of power that the founding fathers sought to avoid when they established a federal system of government via the Constitution.

*Id.* (citing *United States v. Wheeler*, 435 U.S. 313, 320 (1978); *Bartkus*, 359 U.S. at 13). The court was "forced to conclude" that, "by the very nature of the powers McAfee possesses, this second prosecution of Patrick is simply 'a sham and a cover' for the first, unsuccessful prosecution of Patrick in a Virginia court." *Id.*

The same analysis applies here: Petrovich, the same prosecutor for the state of Louisiana and the federal government, functioned as one "super sovereign." By the very nature of the powers she possessed, the re-prosecution was "a sham and a cover" for the first, which failed. The

18

re-prosecution violated the double jeopardy clause. The Court must vacate Mr. Taylor's conviction.

### 2. The re-prosecution was vindictive.

The re-prosecution violated the due process clause, too.

Petrovich re-prosecuted Mr. Taylor in federal court only after he successfully set aside the conviction that she obtained against him in state court. But for Mr. Taylor's exercise of his right to appeal, she would not have prosecuted him again; the re-prosecution was necessary to vindicate her prior failed efforts. A vindictive prosecution violates the due process clause: "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.' " *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)).

"A defendant can prove vindictiveness in one of two ways: first, he can present objective evidence to show that the prosecutor's actions were designed to punish him for asserting a legal right; and second, he may be able to show sufficient facts that give rise to a presumption of vindictiveness." *United States v. Cluff*, 857 F.3d 292, 302 (5th Cir. 2017) (citing *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008)). A

19

presumption arises "where there exists a realistic likelihood of vindictiveness." *Id.*

Here there is objective evidence that Petrovich's re-prosecution punished Mr. Taylor for asserting a legal right:  Mr. Taylor had a legal right to appeal.  If he had not successfully set aside the conviction that Petrovich obtained against him in state court, she would not have prosecuted him again.

If these facts are not objective evidence of vindictiveness, they present a realistic likelihood of vindictiveness, such that a presumption of vindictiveness applies.  "To determine whether the presumption of vindictiveness applies, the court 'examine[s] the prosecutor's actions in the context of the entire proceedings,' and '[i]f ... the course of events provides no objective indication that would allay a reasonable apprehension by the defendant that the [additional] charge was vindictive, ... a presumption of vindictiveness applies.'" *United States v. Dvorin*, 817 F.3d 438, 455 (5th Cir. 2016) (quoting *United States v. Krezdorn*, 718 F.2d 1360, 1362–65 (5th Cir.1983) (en banc)).  "The presumption 'cannot be overcome unless the government proves by a preponderance of the evidence that events occurring since the time of the

20

original charge decision altered that initial exercise of the prosecutor's discretion.' " *Id.*

The federal government cannot point to an objective event, besides Mr. Taylor's successful appeal and ultimate acquittal, that would have motivated Petrovich to re-prosecute him. *E.g., id.* at 456 ("The government has not pointed to any objective event that would motivate prosecutors to add a forfeiture count aside from Dvorin's appeal and the agreed remand."). The only explanation is the re-prosecution was "inspired by a determination to 'punish a pesky defendant for exercising his legal rights.' " *United States v. Krezdorn,* 718 F.2d 1360, 1365 (5th Cir. 1983) (en banc). In other words, the re-prosecution was vindictive. For this additional reason the Court must vacate Mr. Taylor's conviction.

### 3. The errors are plain.

"Plain error exists if (1) there is an error, (2) the error is plain, (3) the error affects substantial rights, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Mitchell,* No. 24-60607, 2025 WL 3251467, at *2 (5th Cir. Nov. 21, 2025) (quoting *United States v. Howard,* 766 F.3d 414, 419 (5th Cir. 2014) (cleaned up)).

The errors here are constitutional and are plain.  The same prosecutor cannot re-prosecute a defendant for the same offense after he has been acquitted.  Even if she could, she could not do so here, where the only explanation is he successfully set aside the conviction that she obtained against him in state court.

These plain errors notwithstanding, "[a]n error affects a defendant's substantial rights only if the error was prejudicial." *United States v. McGuire*, 151 F.4th 307, 327 (5th Cir. 2025) (quoting *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 363 (5th Cir. 2010)). "Error is prejudicial if there is a *reasonable probability* that the result of the proceedings would have been different but for the error." *Id.* (quoting *Gonzalez*-Rodriguez, 621 F.3d at 363 (emphasis added)). "The probability of a different result must be sufficient to undermine confidence in the outcome of the proceedings." *Id.* (quoting *Gonzalez*-Rodriguez, 621 F.3d at 363).

There is a reasonable probability that the result would be different here.  But for the errors, there would have been no re-prosecution.

The errors seriously affect the fairness, integrity or public reputation of judicial proceedings.  "It is difficult to imagine an error

22

capable of more drastically effecting the outcome of judicial proceedings than permitting the Government to obtain a conviction for an offense whose prosecution was barred ab initio by the constitutional guarantee of freedom from being 'twice put in jeopardy of life or limb.'" *United States v. Jarvis*, 7 F.3d 404, 413 (4th Cir. 1993). *See also id.* at 413 ("We cannot imagine a course more likely to 'seriously affect the fairness, integrity, or public reputation of judicial proceedings,' than for us to permit Jarvis's conspiracy conviction.") (quoting *United States v. Olano*, 507 U.S. 725, 737 (1993)).

### 4. Mr. Taylor's counsel was ineffective.

To the extent Mr. Taylor's then-counsel did not move to dismiss the indictment or otherwise challenge the re-prosecution, he was ineffective.

A criminal defendant alleging ineffective assistance of counsel claim must prove two things: 1) his counsel's performance was deficient and 2) he was prejudiced by it. *Strickland v. Washington*, 466 U.S. 668 (1984). Mr. Taylor's then-counsel's performance was deficient to the extent he failed to argue the re-prosecution violated the double jeopardy clause and was vindictive. *E.g., Murphy v. Puckett*, 893 F.2d 94, 95 (5th Cir. 1990) (counsel who failed to assert valid double jeopardy defense was

23

ineffective). Mr. Taylor was prejudiced by that deficient performance because, but for the error, there would have been no re-prosecution. *E.g., id.* at 96 ("If counsel had asserted the double jeopardy defense, the state court could not have tried Murphy for armed robbery. If Murphy had not been tried, he obviously could not have been convicted. Thus, the outcome of the trial was vitally affected by counsel's dereliction.").

Mr. Taylor acknowledges "[t]he general rule in this circuit is that a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been before the district court since no opportunity existed to develop the record on the merits of the allegation." *United States v. London*, 568 F.3d 553, 562 (5th Cir. 2009) (citations omitted). If the Court determines that it cannot grant relief on his ineffective assistance of counsel claim here, he wishes to preserve his argument for later review.

## CONCLUSION

For the reasons stated, Mr. Taylor's conviction must be vacated.

Respectfully submitted,

*/s/ Alysson Mills*

Alysson Mills
650 Poydras Street Suite 1525
New Orleans, Louisiana 70130
t/f: 504-586-5253
alysson@alyssonmills.com

*CJA Counsel for Blair Taylor*

25

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of Court using the ECF system, which sent notification of filing to all counsel of record.

December 15, 2025          */s/ Alysson Mills*
                          Alysson Mills

# CERTIFICATE OF COMPLIANCE

1.  This brief contains less than 13,000 words, exclusive of parts exempted by Fed. R. App. P. 32(a)(7)(b). The exact word count is 4,554, exclusive of parts exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Century Schoolbook font in 14-point for text and 12-point for footnotes.

December 15, 2025          */s/ Alysson Mills*
                           Alysson Mills